United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD PARRISH, BOB GRANT, ROY LEE JEFFERSON, WALTER BEACH, DR. CLINTON JONES, WALTER ROBERTS, III, CLIFTON MCNEIL, MARVIN COBB, JOHN BRODIE, CHUCK BEDNARIK, AND PAUL HORNUNG on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>MANATT, PHELPS & PHILLIPS, LLP, and MCKOOL SMITH, PC,<br><br>    Defendants.<br>_____ / | No. C 10-03200 WHA<br><br><br>**ORDER GRANTING MANATT'S MOTION TO DISMISS AND DENYING MCKOOL'S MOTION TO DISMISS AND STRIKE AS MOOT** |

## INTRODUCTION

In this putative class action for legal malpractice and breach of fiduciary duty arising out of a previous litigated-to-verdict class action, former class counsel move to dismiss. Specifically, Defendant Manatt, Phelps & Phillips, LLP moves to dismiss all claims in this action pursuant to FRCP 12(b)(6). Defendant McKool Smith, PC moves to dismiss all claims filed on behalf of the "excluded" plaintiffs, to dismiss plaintiffs' third claim in its entirety, and to strike all references to punitive damages. For the reasons stated below, defendant Manatt's motion to dismiss is **GRANTED**. Defendant McKool's motion to dismiss and strike is therefore **DENIED AS MOOT**.

**STATEMENT**

This sequel class action arises out of a prior certified and litigated class action, *Adderley v. National Football League Players Inc.*, No. C 07-00943 WHA, which was tried to verdict and settled while on appeal. In *Adderley*, a certified class of retired NFL players who had executed group licensing authorizations (GLAs) with the NFL Players' Association (NFLPA) sued the NFLPA for breach of contract and breach of fiduciary duty. In the instant action, two groups of retired NFL players are suing the *Adderley* class counsel for legal malpractice and breach of fiduciary duty.

Judicial notice is taken as to the entire *Adderley* record. Additionally, Manatt's request for judicial notice is **GRANTED IN PART**. Judicial notice is taken as to Manatt Exhibits 1–52, which are letters to the Court regarding the proposed settlement that were not filed on the *Adderley* docket. As to all other Manatt exhibits, judicial notice is **DENIED AS MOOT**. McKool's request for judicial notice is also **DENIED AS MOOT**.

**1.     Bernard Parrish**

In February of 2007, Bernard Parrish and Herbert Adderley filed the complaint that became the *Adderley* class action. Parrish sought to represent a class of retired NFL players who had paid membership dues to the NFLPA. Certification of this class was denied, however, on the grounds that Parrish was an inadequate class representative. This finding was explained with reference to numerous examples of Parrish's conduct that illustrated a racist prejudice and personal vendetta against Gene Upshaw, the then executive director of the NFLPA. Parrish had made extreme remarks directed at Upshaw — for example, comparing him to "Caesar, Napoleon, Idi Amin, Hitler, Stalin, Milosevic, [and] Saddam" — and had invoked black racial stereotypes in analyzing Upshaw's motivations for his professional acts (*e.g.*, "I'm sure that Upshaw hip hop/gangsta rap fraternity will keep [Coach Bill Parcels] busy sorting through a quality pool of dog fighting, gun toting, dui driving, strip club shooting, ass showing team, that only gambles on dog fights and don't take steroids or HGH"). Moreover, Parrish had indicated that he would be unwilling to make any settlement in the case, even if it were ultimately beneficial to any certified class. These expressed attitudes, combined with Parrish's track record of mismanaging his

responsibility to represent retired NFL players in other capacities, made for the rare case in which a putative class's certification was denied solely because its representative was inadequate (*Adderley* Dkt. No. 275 at 11–14).

Bernard Parrish, moreover, was not a member of the class that ultimately was certified in the *Adderley* action. The *Adderley* class was defined to include "[a]ll retired NFL players who executed a group licensing authorization form ("GLA") with the NFLPA that was in effect at any time between February 14, 2003 and February 14, 2007 and which contains [certain language]" (*Adderley* Dkt. No. 289 at 2). Because Parrish did not allege to have signed a GLA with the NFLPA and no such document was identified during the nearly three-year pendency of the *Adderley* action, Parrish did not come within the definition of the certified class. (Indeed, Parish's alleged GLA did not surface until the opposition brief to the instant motions to dismiss was filed.) His name was not included on the final roster of 2,074 class members (*Adderley* TX 2054, *available at* http://retiredplayers.org).

Parrish nonetheless watched the *Adderley* class action closely from the sidelines and frequently voiced his own displeasure with class counsel. At various times, the Court received letters from Parrish (and, out of caution, directed class counsel to investigate and address his concerns). Parrish repeatedly was advised that he should follow the procedures set out in the class notice for making any objections to the settlement proposal and that, even though he was not a class member, he was free to appear and express his views at the settlement fairness hearing on November 19, 2009. (*Adderley* Dkt. Nos. 636, 639). Parrish organized a letter-writing campaign that accounted for the majority of comments received and submitted multiple letters himself. Again, various orders directed class counsel to investigate and address concerns voiced in these letters, and at the fairness hearing the concerns were revisited and deemed resolved (*see Adderley* Dkt. Nos. 650, 657, 664, 665, 670). There is little doubt Parrish is the moving and organizing force behind this sequel lawsuit.

Because Bernard Parrish's name was not included on the final roster of *Adderley* class members, he was not bound by the *Adderley* settlement and his rights were not affected by that judgment; he was not in the class (*see Adderley* Dkt. No. 670 at 2–3).

3

**2.     The Instant Complaint.**

The instant complaint defines two groups of plaintiffs as purported classes. The first group — the alleged "Participating Class" — "consists of all retired NFL players who were party to the underlying action . . . and participated in the settlement of that action." The second group — the alleged "Excluded Class" — "consists of all those retired NFL Players who met the definition of the class in the underlying lawsuit but for reasons unknown were excluded." The two defendants named in the complaint — Manatt and McKool — served as co-class counsel in *Adderley*.

The "excluded" plaintiffs claim legal malpractice against defendants for wrongfully excluding them "from participation in the underlying action therefore depriving [them] from recovery to which they were otherwise entitled" (Compl. ¶ 56). Additionally, both groups of plaintiffs claim legal malpractice and breach of fiduciary duty against defendants for failing to provide the *Adderley* class adequate representation. Plaintiffs' factual allegations identify two failures on which these claims are based:

> (a) Failing to lay the proper foundation for "critical" evidence, resulting in its exclusion, therefore dramatically lessening the classes' recovery in the underlying action; and (b) Failing to present a plausible damages theory on the plaintiffs' claim for breach of fiduciary duty, therefore dramatically lessening the classes' recovery in the underlying action

(Compl. ¶ 47). The "'critical' evidence" was a short email chain related to the marketability of retired NFL player publicity rights. These two shortcomings were referenced in an order awarding the *Adderley* class counsel lower fees than they had requested; the order found the requested amount to be excessive and reluctantly leveled these criticisms only to explain why class counsel did not deserve the premium compensation they had requested (*Adderley* Dkt. No. 669). (Instead, counsel recovered a normal fee.) The factual allegations in the instant complaint are lifted directly from that order.

4

### 3. The *Adderley* Class Action.

The certified class in *Adderley* was defined as follows:

> All retired NFL players who executed a group licensing authorization form ("GLA") with the NFLPA that was in effect at any time between February 14, 2003 and February 14, 2007 and which contains the following language: "[T]he moneys generated by such licensing of retired player group rights will be divided between the player and an escrow account for all eligible NFLPA members who have signed a group licensing authorization form."

(*Adderley* Dkt. No. 289 at 2). This class was allowed to litigate two claims against the NFLPA: breach of the GLA contracts, and breach of fiduciary duty in failing to market the group rights acquired through the GLAs. Following a three-week jury trial in October and November of 2008, the *Adderley* class won on both claims and received a $28.1 million jury verdict. This verdict was composed of zero dollars in compensatory damages for the contract claim, $7.1 million in compensatory damages for the breach-of-fiduciary-duty claim, and $21 million in punitive damages (*Adderley* Dkt. Nos. 561, 562, 563). While that verdict was on appeal to the Ninth Circuit, the case settled for $26.25 million (Compl. ¶ 19).

During the four-month period between preliminary approval (July 2009) and final approval (November 2009) of the *Adderley* settlement, both the class and the public were given notice and an opportunity to be heard (*Adderley* Dkt. Nos. 632, 635). The Court received 53 letters regarding the proposed settlement from retired NFL players, most of which voiced objections. Three of the named plaintiffs in the instant action — Bernard Parrish, Roy Lee Jefferson, and Marvin Cob — availed themselves of this opportunity to submit objections to the settlement. In fact, 41 of the 53 letters received were copies of a standardized objection letter that Parrish had drafted, posted on the internet, and encouraged other former NFL players to sign and submit. Parrish's form letter stated, among other things, that class counsel had acted contrary to the interests of the class and that allowing the jury to use a $7.1 million figure from "phony NFLPA books" as a base for damages (instead of larger figures from an expert report that was not admitted in evidence) was unfair. Several other letters alleged that the *Adderley* class roster improperly included or excluded certain names (*see* Manatt Exh. 1–52).

The judge noted these objections, invited the objectors to appear at a fairness hearing, and requested that class counsel review and summarize the objections (*Adderley* Dkt. No. 650). Class

counsel conducted and reported on this audit and filed responses to the objections (*Adderley* Dkt. No. 657). The judge found that class counsel's responses "failed to sufficiently address the merits of claims by non-class members that they were improperly or inadvertently excluded from the class list" and "failed to sufficiently address letters alleging that the class list contained clearly ineligible individuals" (*Adderley* Dkt. No. 664). Class counsel were directed to "determine whether these letters are indicative of a larger problem with the class list's accuracy" and to file papers addressing this concern (*ibid.*). After further investigation, class counsel reported that the class list "was diligently obtained through the discovery process" and that the judge's concerns regarding possible under- and over-inclusion were unfounded (*Adderley* Dkt. No. 665 at 1). Specifically, class counsel reported that none of the six retired players asserting that they should have been included in the *Adderley* class had produced a signed GLA from the relevant period (*ibid.*).

On November 19, 2009, a hearing on the fairness of the proposed settlement was held pursuant to FRCP 23(e)(2). Concerns that had been raised in the objection letters were addressed at this hearing, and the judge considered all the letters in reaching its final approval of the settlement agreement. In particular, the concerns of non-class members who claimed to be improperly excluded from the class list were discussed in depth at the fairness hearing (*Adderley* Dkt. Nos. 743, 702, 670 at 2–3). The order granting final settlement approval found that these individuals "should not be treated as class members under the settlement agreement given their failure, despite opportunity according to counsel, to show that they signed qualifying GLAs" and specifically noted that such non-class members' "rights are unaffected by this settlement" (*Adderley* Dkt. No. 670 at 3).

**ANALYSIS**

To survive a motion to dismiss for failure to state a claim, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. FRCP 12(b)(6); *Ashcroft v. Iqbal*, --- U.S. --- , 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. *Ibid.* While a court "must take all of the factual

6

allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50. "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal without leave to amend is only appropriate when the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

### 1. The Alleged Excluded Class

By definition, the group of plaintiffs described as the excluded class did not participate in the *Adderley* class action. The individuals identified as representatives of this alleged class — Marvin Cobb, Bob Grant, Clinton Jones, and Walter Roberts — were not listed on the final *Adderley* class roster (*Adderley* TX 2054). As such, these plaintiffs were not bound by the *Adderley* settlement, and their rights were not affected by the *Adderley* class action. This state of affairs was made explicit in the order granting final approval of the *Adderley* settlement agreement (*see* Adderley Dkt. No. 670 at 2–3). Even if these plaintiffs had signed qualifying GLAs and somehow were erroneously omitted from the *Adderley* class, their rights were not adjudicated in the *Adderley* class action, and they remain free to sue the NFLPA independently. They have not released their claims.

Because this group of plaintiffs was not affected in any way by the *Adderley* class action, its members could not have suffered injury from any acts or omissions by the *Adderley* class counsel. And without the essential element of damages, the excluded plaintiffs cannot state a claim for malpractice or breach of fiduciary duty. McKool identified this deficiency with the excluded plaintiffs' pleadings (McKool Br. 10–11), and in response plaintiffs merely repeated their factual allegation that the excluded plaintiffs had indeed signed qualifying GLAs (Opp. 13–14). Accordingly, Manatt's motion to dismiss all three of the excluded plaintiffs' claims pursuant to FRCP 12(b)(6) must be granted.

Class actions are most useful but imperfect devices. Occasionally, individuals who fall within the definition of a certified class are not found or fail to show membership, and they wind up being omitted from the class list. At least in the instant scenario, the structure of the class

action device itself anticipated and accounted for this possibility by preserving the unprejudiced rights of such individuals to file suit apart from the class action.

### 2. The Alleged Participating Class

By definition, the group of plaintiffs described as the participating class "were party to" the *Adderley* class action and "participated in the settlement of that action" (Compl. 2). Indeed, Roy Lee Jefferson, Chuck Bednarik, Paul Hornung, John Brodie, Clifton McNeil, and Walter Beach — all of the named representatives of this class except Parrish himself — are listed on the final class roster (*Adderley* TX 2054). These plaintiffs now plead two alleged deficiencies in the *Adderley* counsels' handling of the trial: (1) failing to lay the proper evidentiary foundation for a short email chain related to the marketability of retired NFL player publicity rights; and (2) failing to present an independent damages theory on the *Adderley* plaintiffs' claim for breach of fiduciary duty.

The time for such allegations, however, has passed. The participating plaintiffs had notice of defendants' alleged failures from the time they were committed at trial, and plaintiffs were afforded numerous opportunities to raise objections to them over an extended period of time — at the three-week trial itself, during the eight-month period while the appeal to the Ninth Circuit was pending before the settlement approval process began, or during the four-month settlement approval process. Other issues related to the adequacy of class counsel's performance were in fact raised by Jefferson, Cobb, and others in letters to the Court during the settlement approval process, and the judge weighed their concerns in determining to approve the settlement agreement (*Adderley* Dkt. Nos. 657, 670 at 3; *see, e.g.*, Manatt Exh. 11 ). The specific shortcomings now alleged against class counsel, however, never were raised.

As noted, the participating plaintiffs' factual allegations against the *Adderley* class counsel are cribbed from an order regarding attorney's fees issued on November 23, 2009 (*Adderley* Dkt. No. 669). Significantly, this order was not the first time the Court alerted the parties to the *Adderley* class counsel's evidentiary shortcomings. Far from it. In particular, defendants' failure to provide an independent damages theory for the breach-of-fiduciary-duty claim had been raised in the public record on multiple prior occasions.

8

*First*, the judge raised this issue and engaged counsel in a lengthy discussion on it during a hearing regarding jury instructions on November 5, 2008 (*Adderley* Dkt. No. 542 at 2461–79). The judge asked:

> But the record shows nothing about how much that money would be and with whom it might be. There's no — there's no testimony, is there, or analysis that this group of 2,000 retired players would command a certain range of price if they had been sold as a group by a reasonable agent?

(*ibid.* at 2461). Hypothesizing such a reasonable agent named Mr. Hollywood, the judge later continued, "And once again we come back to the question of: Had Mr. Hollywood gone out to do that, what would be the plausible range of potential royalties that such a group license would have commanded in the market? There's no evidence on this point." (*id.* at 2469). The judge finally cautioned defendants, "It's your burden of proof. What evidence did you put in on what that independent agent who had nothing to do with the league, nothing to do with the defendants, what they would have been able to negotiate in the marketplace? I didn't hear any evidence on that." (*id.* at 2478). The transcript of this hearing was filed in the public record on the same day the hearing took place.

*Second*, the judge again addressed this issue in a January 13, 2009 order denying several post-trial motions including a motion for judgment as a matter of law in favor of the *Adderley* defendants. The court summarized:

> So the correct measure of damages [on the claim for breach of fiduciary duty] was before the jury. Was there evidence from which the jury, following this measure, could assemble its own calculation? The defense is correct in that no expert testimony addressed the range of prices a group license for all 2074 class members might have commanded in the market during the times in question. In this regard, it is even true that the Court itself noted this omission before the case went to the jury and heard argument on its significance. Possibly, the better plaintiff's practice would have been to have called a sports agent to advise the jury on what the plausible range of prices that might have been fetched had defendants complied with their duty.

(*Adderley* Dkt. No. 605 at 5). This order also was filed in the public record, months before the settlement. (The order nonetheless held that there was sufficient evidence from which the jury could cobble together its own damage analysis, given the correct measure of damages, to reach the $7.1 million in compensatory damages.)

9

1    Despite the fact that the judge raised this issue at least three times in the public record and
2 several class members availed themselves of the opportunity to lodge objections regarding class
3 counsel, none of the class members voiced displeasure with the alleged shortcomings that now
4 form the basis for their instant action against class counsel. The class members' standardized
5 objection letters addressed a different grievance with the damages calculation, and none of the
6 class members voiced any objections at the fairness hearing on November 19, 2009 (Manatt
7 Exh. 1–52; *Adderley* Dkt. No. 743).

8    In deciding whether to grant settlement approval, the judge considered all the complaints
9 about class counsel's performance that had been submitted through the formalized objection
10 procedure. By this time, the participating plaintiffs had long been on notice of the specific
11 evidentiary deficiencies for which they now fault class counsel, and they had been invited to
12 voice any such objections during the settlement process. If the participating plaintiffs believed
13 they had been the victims of malpractice or breach of fiduciary duty, they had a duty to
14 specifically object to the settlement on those grounds. None did. Because they did not, the
15 complaining class members now are estopped to make those objections (and the non-class-
16 member plaintiffs herein have no standing to complain anyway).

17    Plaintiffs make two arguments as to why the record in *Adderley* should not preclude their
18 current claims; neither argument is availing. *First*, plaintiffs argue that a court's determination
19 that a class action settlement is fair and reasonable for purposes of settlement approval is not a
20 determination that class counsel's trial performance was adequate by malpractice standards
21 (Opp. 5–8). *Second*, plaintiffs argue that the contention that they "had a full and fair opportunity
22 to litigate the adequacy of the law firms' representation in the underlying case is baseless . . .
23 because none of Plaintiff's claims in this action accrued until after the settlement had been
24 approved" (Opp. 8–9).

25    These arguments are logical in the abstract, and they provide a reason not to apply the
26 doctrine of claim preclusion in the instant action, but they run orthogonal to the rationale of this
27 order. This order does not rely on the theory that approval of the settlement constituted a finding
28 that class counsel's representation at trial was competent. Nor does it rely on the theory that the

10

"issue" of class counsel's adequacy was fairly and fully litigated in *Adderley*. On the contrary, it finds that the grievances the participating plaintiffs currently allege against class counsel were *not* part of the *Adderley* action — because these plaintiffs failed, despite being on notice and being obliged to speak up, to raise them.

In sum, plaintiffs support their malpractice and breach-of-fiduciary-duty claims against defendants by alleging that plaintiffs failed to provide two specific items of evidence at trial. Yet during the *Adderley* action, plaintiffs had repeated notice of these alleged failures, multiple opportunities to litigate their displeasure with them or opt out of the class, and a duty to lodge any objections to the settlement during the formalized approval process. Because the time for plaintiffs to assert these alleged failures has come and gone without so much as a peep from plaintiffs, the general principles of estoppel now preclude them from making the factual allegations set forth in the instant complaint. Accordingly, Manatt's motion to dismiss both of the participating plaintiffs' claims will be granted.

*       *       *

This order stops short of accepting the main theme of the defense and in part disagrees with it. The defense asserts that a Rule 23 settlement approval absolves class counsel of all malpractice claims. This order agrees that if the alleged malpractice occurs in the course of *negotiating* a class settlement, then it is absolved by a judicial finding that the settlement is fair and reasonable for the class. Class members may not then sue counsel for malfeasance *in the negotiation*. A distinction, however, must be drawn as to malpractice occurring at trial (and perhaps in other contexts).

If class counsel commit malpractice in the course of a trial, the defendant cannot be denied the verdict merely because the class is prejudiced by its counsel's mistake. To hold otherwise would deny the defendant due process (by forcing the defendant to run the gauntlet twice or even multiple times until class counsel got it right). In such a case, any subsequent class settlement must necessarily take into account the disappointing verdict and corresponding lower settlement value of the case. If — taking the verdict as an unfortunate given with a corresponding lower settlement value of the case — the settlement is fair and reasonable to the class, the district judge

11

1  should approve the settlement, for, again, the defense cannot be denied the outcome merely
2  because class counsel goofed. Such approval, however, should not absolve class counsel of any
3  trial malpractice leading to the disappointing verdict. It merely blesses the settlement as the best
4  that can be expected in light of the verdict. In that scenario, class members could then sue for the
5  trial malpractice that led to the tarnished verdict and settlement (assuming their specific
6  grievances are preserved).

7  The decisions cited by movants do not contradict and, indeed, seem consistent with the
8  foregoing. And, contrary to movants, no decision holds that in the face of malpractice by class
9  counsel at trial, a class-wide verdict should be taken away from a defendant, the class then
10 decertified, and the defendant subjected to the risk of re-litigating the same claims. In fact, no
11 decision cited has ever taken such a course.[1] The decisions saying that a fairness determination
12 wipes clean a claim of malpractice seemed to have dealt with malfeasance or conflicts *in
13 negotiating the settlement*. They did not deal with malpractice leading to a disappointing verdict.
14 Rather than the sweeping theory advanced by former class counsel, this order rests on the
15 narrower estoppel ground stated above.

16                *        *        *

17 Since this new lawsuit is based entirely on statements made by the undersigned judge on
18 the attorney's fees petition in the original case, the same judge will now state clearly that the
19 Court was there addressing only whether class counsel deserved a premium fee, deciding there
20 they did not, the main reason being the absence of a damage study keyed into the only liability
21 theory on which they won compensatory damages. The jury gave only $7.1 million in
22 compensatory damages. But then the jury layered on a whopping punitive award of $21 million.
23 This was a multiple of nearly three. In the Court's judgment, this large punitive award was the
24 result of the excellent trial work of Attorney Pete Parcher of the Manatt firm, who came into the
25 case for trial. His performance was superior. He made a convincing case for breach of fiduciary

---

[1] The only cited decision involving de-certification *after* a trial is *Key v. Gillette Co.*, 782 F.2d 5 (1st Cir. 1986). In that instance, a "tentative" class certification was revoked after a five-day bench trial, before any findings on the merits of the class claims were reached. *See Key v. Gillette Co.*, 104 F.R.D. 139 (D. Mass. 1985).

12

duty. Yes, he had to work with a problematic damage study, but he did so admirably — winning a large punitive verdict. Put differently, the jury seems to have made up for the damage study issue by awarding large punitive damages. On appeal, the absence of a damage study might have been a ground for reversal, just as it was a hotly contested issue on Rule 50 proceedings. But the settlement effectively locked in almost all of the verdict.

This order does not unsay anything previously said in limiting counsel to a normal class fee and in denying them a premium fee. But this order adds an important clarification — the end result achieved for the class managed to make up for the low compensatory verdict by hanging onto almost all of the high punitive award. If there was any malpractice in the compensatory damage theory, it was eclipsed by the jury's generous punitive award and by the ability of class counsel to hang onto $26.25 million of it in the final settlement. Since this sequel lawsuit is based entirely on statements made by the undersigned judge on the fee petition, the same judge feels an obligation to the fair administration of justice to make this clarification. There being no other basis for the suit, it will be dismissed on this alternative ground as well.

## CONCLUSION

Judicial notice is taken as to the entire *Adderley* record. Additionally, defendant Manatt's request for judicial notice is **GRANTED IN PART**. Judicial notice is taken as to Manatt exhibits 1–52. As to all other Manatt exhibits, Manatt's request for judicial notice is **DENIED AS MOOT**. Defendant McKool's request for judicial notice and plaintiffs' request for judicial notice are also **DENIED AS MOOT**.

Defendant Manatt's motion to dismiss all claims pursuant to FRCP 12(b)(6) is **GRANTED**. Leave to amend the complaint is **DENIED** because the deficiencies in the pleadings — the inability of the "excluded" plaintiffs to allege the essential element of damages and the estoppel blocking the "participating" plaintiffs' allegations — could not possibly be cured by amendment. Defendant McKool's motion to dismiss and strike is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: December 13, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE