BLECHER COLLINS PEPPERMAN & JOYE, P.C.
Maxwell M. Blecher (State Bar No. 26202)
  *mblecher@blechercollins.com*
Howard K. Alperin (State Bar No. 158809)
  *halperin@blechercollins.com*
Theo "John" Giovanni Arbucci (State Bar No. 249811)
  *jarbucci@blechercollins.com*
Alyson C. Decker (State Bar No. 252384)
  *adecker@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Plaintiffs and The Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD PARRISH, BOB GRANT, ROY LEE JEFFERSON, WALTER BEACH, DR. CLINTON JONES, WALTER ROBERTS, III, CLIFTON MCNEIL, MARVIN COBB, JOHN BRODIE, CHUCK BEDNARIK, AND PAUL HORNUNG on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MANATT, PHELPS & PHILLIPS, LLP, and MCKOOL SMITH, PC,<br><br>Defendants. | Case No. 3:10-CV-03200-WHA<br><br>[The Hon. William H. Alsup]<br><br>**NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT AND OF PROPOSED PLAN OF DISTRIBUTION**<br><br>Date:     May 30, 2013<br>Time:    3:00 p.m.<br>Place:    Courtroom 8, 19th Floor,<br>            United States Courthouse<br>            450 Golden Gate Avenue,<br>            San Francisco, CA 94102<br><br>[Filed concurrently with Declaration of Maxwell M. Blecher in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement and of Proposed Plan of Distribution; Declaration of Amanda Horn Re: Class Notice; Declaration of Walter Beach, III; and [Proposed] Order Granting Motion for Final Approval of Settlement and of Proposed Plan of Distribution] |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. ALL REQUIREMENTS OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN SATISFIED ........................................................................................................... 2

III. BACKGROUND OF LITIGATION ...................................................................................... 3

    A. Procedural Posture ..................................................................................................... 3

    B. Allegations of the Class and Defendants' Response ................................................. 4

IV. SUMMARY OF SETTLEMENT TERMS AND ALLOCATION PLAN ............................. 4

V. THE SETTLEMENT IS FAIR AND REASONABLE .......................................................... 5

    A. The Settlement Agreement is Presumed Fair ............................................................ 5

    B. The Settlement Agreement is Also Fair, Adequate, and Reasonable Under the Multi-Factor Balancing Test Employed by the Courts ....................................... 6

        1. The Strength of Plaintiffs' Case and The Risk, Complexity, and Expense of Further Litigation, Including the Maintenance of Class Status, Demonstrate that the Settlement is Proper ........................................ 7

        2. The Amount of the Settlement Also Demonstrates that the Settlement is Proper. ................................................................................................... 9

        3. The Stage of the Proceedings, the Experience and Views of Counsel, and the Reaction of the Class Members to the Proposed Settlement, Warrant Approval ................................................................................................... 10

        4. The Settlement Agreement is Not the Result of Fraud or Collusion. ......... 11

VI. THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE ................................... 12

VII. CONCLUSION .................................................................................................................. 13

Blecher Collins Pepperman & Joye

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Adderley v. National Football League Players Incorporated,
  et al., No. C 07-00943 WHA ................................................................................................ 3

Adderley v. National Football League Players, Inc.,
  No. 07-00943-WHA ( .......................................................................................................... 3

Amchen Products, Inc. v. Windsor,
  521 U.S. 591, 117 S. Ct. 2231 (1997) .................................................................................. 8

Boyd v. Bechtel Corp.,
  485 F. Supp. 610 (N.D. Cal. 1979) .................................................................................... 10

City of Detroit v. Grinnell Corp.,
  495 F.2d 448 (2d Cir. 1974) ................................................................................................ 7

Class Plaintiffs v. City of Seattle,
  955 F.2d 1268 (9th Cir. 1997) ............................................................................................ 12

Glass v. UBS Financial Services, Inc.,
  No. C-06-4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .............................................. 9

Hanlon v. Chrysler,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................................. 6

In re Critical Path Inc.,
  No. C 01-00551, 2002 WL 32627559 (N.D. Cal. June 18, 2002) ....................................... 6

In re Heritage Bond Litigation,
  No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................. 5, 12

In re Mego Fin. Corp. Sec. Litig.,
  213 F.3d 454 (9th Cir. 2000) ................................................................................................ 9

In re Omnivision Tech., Inc.,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................................. 10

In re Oracle Securities Litigation,
  No. C 90-0931, 1994 WL 502054 (N.D. Cal. June 18, 1994) ........................................... 12

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,
  148 F.3d 283 (9th Cir. 1998) ................................................................................................ 8

In re Zoran Corp. Derivative Litigation,
  No. C 06-05503, 2008 WL 941897 (N.D. Cal. Apr. 7, 2008) ............................................ 11

Jaffe v. Morgan Stanley,
  No. C 06-3903, 2008 WL 346417 (N.D. Cal. Feb. 7, 2008) ............................................... 9

Kakani v. Oracle Corp.,
    No. C 06-06493, 2007 WL 2221073 (N.D. Cal. Aug. 2, 2007) ........................................... 9

Linney v. Alaska Cellular P'ship,
    No. C-96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................... 5

National Rural Telecom. Coop. v. DIRECTV, Inc.,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... passim

Officers for Justice v. Civil Serv. Comm'n of San Francisco,
    688 F.2d 615 (9th Cir. 1982) ............................................................................... 5, 6, 7, 9

Torrisi v. Tucson Elec. Power Co.,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................................ 6, 10

Wyly v. Weiss,
    697 F.3d 131 (2d Cir. 2012) ............................................................................................. 8

**Federal Rules**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 4



Blecher Collins Pepperman & Joye

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 30, 2013 at 3:00 p.m., or as soon thereafter as it may be heard, at the U.S. District Court, Northern District of California, located at 455 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Alsup, Plaintiffs Roy Lee Jefferson, Walter Beach, Clifton McNeil, John Brodie, Chuck Bednarik, and Paul Hornung, the ("Plaintiffs") on behalf of themselves and the previously certified Class, by Blecher Collins Pepperman & Joye, P.C. ("Class Counsel"), will and hereby do respectfully move the Court for an Order which: (1) grants final approval of the Settlement; (2) grants final approval of the Proposed Plan of Distribution; (3) orders the consummation of the settlement subject to its terms; and (4) grants an award of attorney's fees and costs to Class Counsel as set forth in the Motion for Attorney's Fees and Costs filed with this Court on March 1, 2013.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities; the attached exhibits; the Declarations of Maxwell M. Blecher, Amanda Horn, and Walter Beach in Support of this motion; the [Proposed] Order; the pleadings, records, and papers on file in this action; any argument present at the hearing on this motion; and all other matters properly before this Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Roy Lee Jefferson, Walter Beach, Clifton McNeil, John Brodie, Chuck Bednarik, and Paul Hornung ("Plaintiffs"), by Blecher Collins Pepperman & Joye, P.C. ("Class Counsel"), respectfully submit this memorandum in support of this motion for an Order finally approving the settlement of this class action with Defendants Manatt, Phelps & Phillips, LLP ("Manatt") and McKool Smith, P.C. ("McKool") (collectively, "Defendants"). Plaintiffs also seek an Order finally approving the proposed plan of distribution. Defendants do not oppose the relief that Plaintiffs and the Class request in this Motion but do not stipulate to, and do not necessarily agree with, the statements made in this memorandum.

As this Court is aware, on August 12, 2012, while an appeal from the Court's December 13, 2011 dismissal (Docket No. 76) was pending in the Ninth Circuit Court of Appeals, the parties

entered into a Settlement Agreement and Release (the "Settlement Agreement"), which was the culmination of two settlement conferences before (and related communications with) Magistrate Judge Joseph C. Spero.

The Settlement Agreement, which was executed on August 30, 2012 and preliminarily approved by this Court on January 31, 2013, was achieved through extensive arms-length negotiations by experienced counsel and was based on the parties' comprehensive knowledge of the relative strengths of their respective case.  Had Plaintiffs and their counsel not settled, they risked obtaining a recovery substantially less than the settlement or, of course, no recovery at all.  Defendants have vigorously denied Plaintiffs' allegations, denied that they engaged in wrong-doing, and denied that they have any liability whatsoever.  To that end, Defendants have employed able counsel and have expended substantial resources defending the case.

On January 31, 2013, the Court preliminarily approved the Settlement Agreement, certified a Settlement Class, and required Class Counsel to give notice to the Class.  Plaintiffs now seek final approval of the Settlement and of the Proposed Plan of Distribution, among other things.

## II. ALL REQUIREMENTS OF THE PRELIMINARY APPROVAL ORDER HAVE BEEN SATISFIED

On January 31, 2013, the Court issued an Order (Docket No. 116) (the "Order") preliminarily approving the Settlement Agreement between Plaintiffs and Defendants.  The Order directed Class Counsel to distribute the Notice of Proposed Settlement and Settlement Hearing (the "Notice") to all Class Members by February 15, 2013.  Declaration of Maxwell M. Blecher, Esq. ("Blecher Decl.") ¶ 3, Exh. A.

All requirements of the Order have been satisfied.  As directed, Class Counsel modified the Proposed Notice to comply with the requirements of the Order.  Blecher Decl. ¶ 4.  Class Counsel caused Garden City Group ("Settlement Administrator") to distribute copies of the Notice by first-class mail to Class Members as well as the Proposed Plan of Distribution, which was attached to the Notice as Exhibit A and separately posted to the internet website (defined below).  Blecher Decl. ¶ 5, Exh. B;  Declaration of Amanda Horn ("Horn Decl.") ¶ 9.  The Notice stated that any objections to the Settlement, including to the Plan of Distribution, must be received by

April 15, 2013.  Id.  The Notice also stated that any objections to Class Counsel's fee request must also be received by April 15, 2013.  Id.

Class Counsel also caused the Settlement Administrator to establish and maintain a 24-hour toll-free telephone helpline where Class Members could obtain information about the settlement.  Blecher Decl. ¶ 6; Horn Decl. ¶ 13.  Once a caller connects to the helpline, he or she hears an Interactive Voice Recording ("IVR").  Horn Decl. ¶ 13.  The IVR also allows a caller to leave a message and request a call back to be returned by a live operator.  Id.  The Settlement Administrator promptly called each person from whom a return call was requested.  Id.

In addition, Class Counsel caused the Settlement Administrator to maintain an official website at www.retiredplayerclassaction.com for the purpose of providing the Notice to Class Members via the Internet (the "Website").  The Website also provides information about the settlement and to answer those questions most frequently asked by the Class Members.  Blecher Decl. ¶ 7; Horn Decl. ¶ 14.  The same website was set up by the Settlement Administrator during the prior class action, <u>Adderley v. National Football League Players, Inc.</u>, No. 07-00943-WHA ("Adderley").  Id.

As required by the Order, Class Counsel filed its Motion for Attorney Fees and Costs on March 1, 2013.  The motion and all exhibits were uploaded to the www.retiredplayerclassaction.com website on the same day.  Blecher Decl. ¶ 8.

## III. BACKGROUND OF LITIGATION

### A. Procedural Posture

On January 31, 2013, the Court ruled that this lawsuit may proceed as a class action for settlement purposes ("the Order").  The certified Class was defined as:

> All persons who were members of the certified class in the action styled *Adderley v. National Football League Players Incorporated, et al.,* No. C 07-00943 WHA and who did not opt out of the class, including each of the named Plaintiffs.  The proposed Settlement Class shall also include all persons who, by operation of law or otherwise, including, but not limited to, by assignment rights of survivorship, marriage, domestic partnership, devise, agency, affiliation, or subrogation, own or have the right to enforce any portion of any of the claims brought in the present action by or on behalf of any person in the Settlement Class.

-3-    CASE NO. 3:10-CV-03200-WHA
NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

### B. Allegations of the Class and Defendants' Response

Plaintiffs Roy Lee Jefferson, Walter Beach, Clifton McNeil, John Brodie, Chuck Bednarik, and Paul Hornung, individually and as class representatives, contend Defendants committed legal malpractice arising out of their representation of the certified class in the Adderley action.

Plaintiffs filed this action on July 21, 2010, alleging that Defendants had committed malpractice arising out of their representation of the Certified Class in the *Adderley a*ction. On October 29, 2010, Defendants moved to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 13, 2010, the Court dismissed the Complaint. Plaintiffs timely filed a Notice of Appeal to the Ninth Circuit Court of Appeals. The parties fully briefed the matter to the Ninth Circuit and oral argument was held on April 18, 2012. Following oral argument, the parties engaged in arm's-length negotiations on June 20, 2012 and July 26, 2012, with the assistance of Magistrate Judge Spero.

Defendants have denied all of Plaintiffs' allegations and deny that they engaged in any wrongdoing, or that they have any liability, whatsoever. Eventually, Defendants agreed to pay Three Million Five Hundred Thousand Dollars ($3,500,000.00) to settle all claims.

### IV. SUMMARY OF SETTLEMENT TERMS AND ALLOCATION PLAN

The key provisions of the Settlement Agreement relevant to the Class are as follows:

First, Defendants have deposited $3,500,000.00 into an escrow account to be used as the net settlement fund. Blecher Decl., ¶ 9, Exhs. C and D. All costs, fees, and expenses will be paid from this settlement fund, including any attorney's fees and settlement administration costs.

Second, after deducting attorney's fees, litigation costs, and administration costs, the settlement will be distributed based on a per-year basis (for each year between 2003-2006) in the same percentage as ordered and approved in the Adderley settlement.

Third, Class Counsel Blecher Collins Pepperman & Joye, P.C., will seek reimbursement of costs and expenses in the amount of approximately $100,000 and for attorney's fees in an amount equal to 25% of the remaining settlement fund after deduction of any costs and expenses awarded by the Court.

Fourth, the release would apply to each class member who does not timely opt out and will release Defendants from "all claims and causes of action . . . that arise out of the facts, occurrences, transactions, or other matters that were alleged in, and are the subject of or relate to the present action" as set forth in paragraph six of the Settlement Agreement. Blecher Decl., ¶ 9, Exh. C.

## V. THE SETTLEMENT IS FAIR AND REASONABLE

As protection for absent Class Members, Rule 23(e) requires that a class action only be settled with the approval of the Court. See Officers for Justice v. Civil Serv. Comm'n of San Francisco, 688 F.2d 615, 623-24 (9th Cir. 1982). It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution." Id. at 625. Indeed, "unless [a] settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." National Rural Telecom. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004); 4 A Conte & H. Newberg, Newberg on Class Actions § 11:50 at 155 (4th ed. 2002). This is especially true of class actions.

### A. The Settlement Agreement is Presumed Fair

A presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) the settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently. In re Heritage Bond Litigation, No. 02-ML-1475, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005); Linney v. Alaska Cellular P'ship, No. C-96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), aff'd, 151 F.3d 1234 (9th Cir. 1998). Here, the parties' Settlement Agreement is presumed fair. The settlement was reached by experienced, fully informed counsel after several years of litigation. See Blecher Decl. ¶ 9. It also took protracted negotiations assisted by Magistrate Judge Joseph Spero and experienced counsel to reach terms on which both parties could agree. Id.

## B. The Settlement Agreement is Also Fair, Adequate, and Reasonable Under the Multi-Factor Balancing Test Employed by the Courts

It is the responsibility of this Court to determine whether the settlement is "fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler, 150 F.3d 1011, 1026 (9th Cir. 1998). In doing so, the Court should consider a number of factors, including: (1) the strength of Plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the Class Members to the proposed settlement. Officers for Justice, 688 F.2d at 625; In re Critical Path Inc., No. C 01-00551, 2002 WL 32627559, at *5 (N.D. Cal. June 18, 2002).[1]

The Court can give varying weight to these or other factors, depending on the circumstances of the particular case. Officers for Justice, 688 F.2d at 625; National Rural Telecomm. Coop., 221 F.R.D. at 526 (citing 5 Moore's Federal Practice § 23.85[2][a] (Matthew Bender 3d ed.)). Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).

It is also worth noting that "the settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits." Officers for Justice, 688 F.2d at 625. The Court should not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." Id.

Ultimately, review is limited to the extent necessary "to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

---

[1] There is one final factor—the presence of a governmental participant—but that factor is not present here. Hanlon, 150 F.3d at 1026.

concerned." Id. ("Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974))). As demonstrated below, an analysis of each of the factors set forth above strongly supports a finding that the settlement is fair, reasonable, and adequate, and that it is in the best interest of the Class.

### 1. The Strength of Plaintiffs' Case and The Risk, Complexity, and Expense of Further Litigation, Including the Maintenance of Class Status, Demonstrate that the Settlement is Proper

This case is inherently complex because it involves claims of legal malpractice arising out of a litigated-to-trial class action lawsuit. Legal malpractice is now a demanding, frequently changing and evolving area of the law, particularly where, as here, the causation element of Plaintiffs' case requires the trial of a "case within a case." In short, the complexity of the legal claims Plaintiffs assert, which will necessitate retrying the underlying Adderley action, confirms that litigating this case through trial would be a long and difficult process requiring substantial expenditures of time and money by both the Court and the parties.

Further, in this case, Plaintiffs face a triple burden: (1) prevailing in their pending appeal of this Court's order dismissing the action; (2) obtaining class certification; and (3) proving their malpractice claims at trial (assuming Plaintiffs could withstand a motion for summary judgment).

Although, this Court's dismissal of this action remains in place, the parties reached an agreement to settle after oral argument had occurred before a three-judge panel of the Ninth Circuit, but before the panel had issued its decision. Thus, even if the dismissal were to be reversed by the Ninth Circuit, Plaintiffs would still need to obtain class certification, survive multiple motions for summary judgment, and prevail at trial. Plaintiffs contend that this class is capable of certification but are cognizant of Defendants' proposed bases of opposition and acknowledge that certification is not guaranteed. Furthermore, even after class certification, Plaintiffs would ultimately have to prove that Defendants committed malpractice. Any Ninth Circuit decision, if issued, would not likely provide enlightenment on the basic malpractice claim. Having already been dismissed with prejudice once, ultimate victory in this case is by no means

assured.

Defendants intended to, and were capable of, vigorously defending this matter through trial and the appellate process if the parties could not agree on a settlement amount. Since the time that the settlement was consummated and the settlement funds were escrowed in this case, the Second Circuit Court of Appeals issued its opinion in the case of Wyly v. Weiss, 697 F.3d 131 (2d Cir. 2012)—an opinion that is highly advantageous to Defendants. While this decision is not binding on the Ninth Circuit, it could nevertheless affect the Ninth Circuit's evaluation of this case in the pending appeal. If the dismissal of this case were to be reversed by the Ninth Circuit, Defendants would likely raise the Wyly decision with this Court at every turn in pursuit of alternative grounds to have the action dismissed for a second time. In sum, there is considerable risk in litigating this case, and the proposed settlement provides the Class with a certain recovery and timely recovery that protects Plaintiffs against the real possibility of no recovery at all if this case proceeds to trial.

Maintenance of this matter as a class action through trial is not significant in the evaluation of settlement-only class actions because, as the Supreme Court noted in Amchen Products, Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248 (1997), the proposal in a settlement-only class action is "that there be no trial." See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 321 (9th Cir. 1998). As a result, this factor does not affect the fairness inquiry in this settlement-only class action. Furthermore, under Rule 23, a district court may decertify or modify a class at any time during the litigation if it proves to be unmanageable.

Acceptance and approval of a settlement is preferable to lengthy and expensive litigation with uncertain results. National Rural Telecomm. Coop., 221 F.R.D. at 526 (citing 4 A Conte & H. Newberg, Newberg on Class Action, § 11:50 at 155 (4th ed. 2002)). "The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'" National Rural Telecomm. Coop., 221 F.R.D. at 526 (citations omitted). The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators. Id.

1   In light of the above-described risk, expense, complexity, and likely duration of this case
2   compared with the strength of Plaintiffs' case, recovery of $3,500,000 in cash for the Class is
3   indeed a remarkable and excellent result.

### 2. The Amount of the Settlement Also Demonstrates that the Settlement is Proper.

In assessing the consideration obtained by the class members in a class-action settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." National Rural Telecomm. Coop., 221 F.R.D. at 527 (quoting Officers for Justice, 688 F.2d at 628). In determining whether the amount of a proposed settlement is fair, it has been suggested that the district court compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. Glass v. UBS Financial Services, Inc., No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000)). Even a cash settlement amounting to only a fraction of the potential recovery—which is not the case here given that Defendants' offer represents in excess of 50% of the value of Plaintiffs' claim based upon Plaintiffs' own retained expert—does not per se render the settlement inadequate or unfair. Id. (approving settlement of 25% to 30% of the amount plaintiffs hoped to prove at trial).

In the context of settlement, class plaintiffs typically accept some fraction of their damages in exchange for avoidance of the risks and costs of trial. See, e.g., Jaffe v. Morgan Stanley, No. C 06-3903, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater [than 40% of predicted damages], but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial."); see also Kakani v. Oracle Corp., No. C 06-06493, 2007 WL 2221073, at *3 (N.D. Cal. Aug. 2, 2007) (granting preliminary approval to settlement for 12.3 % of maximum claims). Here, Defendants' agreement to pay $3,500,000.00 million represents greater than 50% of Plaintiffs' maximum damages as computed by Plaintiff's own damages expert Karl Schulze. Blecher Decl. 10, Exh. E. While obtaining greater than 50% of their maximum potential recovery, Plaintiffs avoid the uncertainties, risks, and costs that come with further

litigation. This is a demonstrably strong and credible result for the Class. Indeed, the Court can approve the Settlement Agreement based on this factor alone. See Torrisi, 8 F.3d at 1376 (one factor alone may prove determinative in finding sufficient grounds for court approval).

### 3. The Stage of the Proceedings, the Experience and Views of Counsel, and the Reaction of the Class Members to the Proposed Settlement, Warrant Approval

In approving class settlements, courts generally defer to the judgment of experienced counsel who have conducted arms-length negotiations. In re Omnivision Tech., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007); Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979). Indeed, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." National Rural Telecomm. Coop., 221 F.R.D at 528. The reason for this is that the "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Id. For this same reason, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." Id.

In this case, the settlement reflects the result of extensive, arms-length negotiations between experienced counsel with the assistance of Magistrate Judge Spero. Blecher Decl. ¶ 11. Because of the preparation, investigation, and evaluation by counsel in this matter on behalf of both Defendants and the Class, the parties are in an excellent position to make a realistic assessment of the strengths and weaknesses of the claims and defenses.

The reaction of the class members to a proposed settlement also is a proper consideration for the Court. Omnivision, 559 F. Supp. 2d at 1043; National Rural Telecomm. Coop., 221 F.R.D. at 528 (quoting 5 Moore's Federal Practice § 23.85[2][d]). The absence of a large number of objections to a proposed class settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members. National Rural Telecomm. Coop., 221 F.R.D. at 529. In this case, no objections were asserted.

Here, all of the retired players who have contacted Class Counsel about the settlement have indicated their approval. In total, Class Counsel has received telephone calls from eighteen (18)

1 class members since distribution of the Notice.  All 18 have praised Class Counsel on obtaining a
2 recovery for them in this case.  Blecher Decl. ¶ 13.  Class Counsel and Plaintiff Walter Beach, III
3 believe that the Settlement Agreement is fair, reasonable, and adequate and in the best interest of
4 the Class.  Blecher Decl. ¶ 12; Declaration of Walter Beach, III ("Beach Decl.") ¶ 5.  Additionally,
5 pursuant to paragraph 6 of the Order, Class Members who wished to exclude themselves from the
6 settlement had to do so in writing by submitting a signed and dated opt-out request to the
7 Settlement Administrator, postmarked no later than April 15, 2013.  As of May 1, 2013, the
8 Settlement Administrator has received two (2) exclusions.  Blecher Decl. ¶ 13; Horn Decl. ¶15.
9 Finally, pursuant to Paragraph 5 of the Order, Class Members who wished to object to the
10 settlement had to do so in writing and file the objections with the Court no later than April 15,
11 2013, with copies to the Parties' counsel.  As of May 1, 2013, neither Class Counsel nor the
12 Settlement Administrator have received any objections to the settlement; nor have any been filed
13 with the Court.  Blecher Decl. ¶ 13; Horn Decl. ¶16.

**4.    The Settlement Agreement is Not the Result of Fraud or Collusion.**

Collusive settlement "usually come as a cash award to counsel, a broad release of claims, and a cosmetic non-cash recovery for the absent shareholders." <u>In re Zoran Corp. Derivative Litigation</u>, No. C 06-05503, 2008 WL 941897, at *2 (N.D. Cal. Apr. 7, 2008).  There is absolutely no hint of any such collusion here.

First, as set forth in the Order, the Settlement Agreement releases apply only to Defendants (and their partners, associates, employees, agents, insurers, attorneys, etc.).  Class members who did not timely opt out would thus only release claims against the law firm Defendants related to the current action.  This release is specifically and narrowly directed at Defendants and their actions in connection with representation of the certified class in Adderley.  Order at 4:10-14.

Class Counsel acknowledges that any fee and expenses award is based on the amount of the common settlement fund and will be granted at the sound discretion of the Court.  Third, as set forth above, because the settlement is based on recovery of over 50% of the damage analysis, the settlement confers a real and substantial benefit upon absent Class Members.

## VI. THE PLAN OF DISTRIBUTION IS FAIR AND REASONABLE

Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the plan must be fair, reasonable and adequate.  See Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1284-85 (9th Cir. 1997); Heritage Bond Litig., 2005 WL 1594403 at *11; see also In re Oracle Securities Litigation, No. C 90-0931, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.  Heritage Bond Litig., 2005 WL 1594403 at *11 (citations omitted). Generally, a plan of allocation that reimburses class members based on the extent of their injuries is "reasonable."  Id.; In re Oracle Securities Litig., 1994 WL 502054 at *1.  However, it also reasonable to "allocate more of the settlement to class members with stronger claims on the merits."  Heritage Bond Litig., 2005 WL 1594403 at *11.

The proposed Plan of Distribution ("Plan") is fair, reasonable, and adequate.  The Plan is identical to the Plan that was approved by this Court in the underlying Adderley Action.  The Plan has been sent by the Settlement Administrator to Class Members via first class mail and posted on the www.retiredplayersclassaction.com website as required by the Order.  As explained in the Plan, Class Members are to be compensated consistent with the way the active players were compensated during the same years at issue in the Adderley lawsuit.  The Plan states:

> The Court approved a Plan in the Adderley Action that the eligible active players received approximately twenty percent (20%) of the total licensing revenue during the class period in 2004; twenty four percent (24%) of the total licensing revenue during the class period in the second year (2005); twenty five percent (25%) of the total licensing revenue in the third year (2006); and thirty one percent (31%) of the total licensing revenue in the fourth year (2007).  Class Counsel further understands, based on the evidence in the Adderley Action, that each year the amounts were divided equally among the eligible active NFL players for that year.

Blecher Decl. ¶5, Exh. B

The Plan also seeks to allocate more of the settlement to those Class Members who had GLAs in effect for more than one year or several years on the bases approved by this Court in the Adderley Action that such Class Members arguably suffered greater harm as a result of the defendants' (in the Adderley Action) failure to market or license their rights.

This formula is reasonable and rational, and it intends to allocate more of the settlement to class members with stronger claims on the merits. The Court in Adderley ruled that this was the fairest division of net settlement proceeds and there is no reason to disrupt this method of distribution in this follow-on litigation to the Adderley case.

## VII. CONCLUSION

Based on the foregoing, Plaintiffs on behalf of themselves and the Certified Class, and Class Counsel respectfully request that the Court, after conducting the final Fairness Hearing, enter an order which: (1) approves the Settlement as fair, reasonable, and adequate and in the best interest of the Class; (2) approves the Plan of Distribution as fair and reasonable; (3) orders the consummation of the settlement subject to its terms; (4) awards costs of expenses in the amount of $ 100,000 to Class Counsel; (5) awards attorney's fees in the amount equal to 25% of the remaining settlement fund after the deduction of award costs and expenses; (6) grants such other and further relief to which the Court believes the Class is entitled.

Dated: May 2, 2013                    BLECHER COLLINS PEPPERMAN & JOYE, P.C.

By:  /s/ Maxwell M. Blecher
     Maxwell M. Blecher
     Attorneys for Plaintiffs and The Class

55333.5