IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARD PARRISH, BOB GRANT, ROY LEE JEFFERSON, WALTER BEACH, DR. CLINTON JONES, WALTER ROBERTS, III, CLIFTON MCNEIL, MARVIN COBB, JOHN BRODIE, CHUCK BEDNARIK, AND PAUL HORNUNG on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MANATT, PHELPS & PHILLIPS, LLP, and MCKOOL SMITH, PC,<br><br>Defendants. | No. C 10-03200 WHA<br><br>**TENTATIVE ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND MOTION FOR ATTORNEY'S FEES AND EXPENSES** |

**INTRODUCTION**

This is a legal malpractice class action alleging that the defendant law firms committed malpractice in their representation of the plaintiffs in an underlying class action suit. The parties have filed a joint motion for final approval of the settlement. Class counsel also request attorney's fees and litigation costs. To the extent stated below, approval of the proposed settlement is **TENTATIVELY GRANTED** and the motion for attorney's fees and expenses is **TENTATIVELY GRANTED**. Final approval may be entered after the expiration of a 90-day period during which certain state and federal officials may file objections.

**STATEMENT**

This action is a follow-on litigation to a prior class action, *Adderley v. National Football League Players Inc.*, No. 07-00943-WHA. *Adderley* was tried to a jury verdict and settled while on appeal. The plaintiffs in the *Adderley* action filed this action on July 21, 2010, alleging that defendant law firms Manatt, Phelps & Phillips, LLP and McKool Smith, P.C. had committed malpractice in their representation of the plaintiffs in *Adderley*.

By order dated December 13, 2010, the complaint herein was dismissed (Dkt. No. 76). Plaintiffs appealed to the United States Court of Appeals for the Ninth Circuit. While the action was on appeal, the parties engaged in negotiations, assisted by Magistrate Judge Joseph Spero. The parties have now filed a motion for preliminary approval of the settlement agreement. Key provisions of the settlement agreement relevant to the proposed class are as follows:

*First*, defendants have deposited $3,500,000 into an escrow account to be used as the net settlement fund. All costs, fees, and expenses will be paid from this settlement fund, including any attorney's fees and settlement administration costs.

*Second*, after deducting attorney's fees and costs and administration expenses, the settlement fund will be distributed based on a per-year basis (for each year between 2003–2006) in the same percentage as ordered and approved in the *Adderley* settlement.

*Third*, the settlement agreement provides that Blecher & Collins, P.C. will seek reimbursement of costs and expenses in the amount of approximately $100,000 and for attorney's fees in an amount equal to 25% of the remaining settlement fund after deduction of any costs and expenses awarded by the Court.[1] To date, class counsel have incurred $50,240.61 in costs. Class counsel anticipate an additional $60,000 in costs from the class action administrator, but request that only $50,000 be reserved to pay such costs (Dkt. No. 118 at 11–12). Class counsel also state that they "will supplement this request to include attorneys' fees incurred in relation to this Motion and the Motion for Final Approval of Settlement as well

---

[1] Plaintiffs' fees motion requests $850,000, which they (incorrectly) contend "equals 25% of the $3,500,000 recovery" (Dkt. No. 118 at 2, 12). This $850,000 figure is actually 25% of the recovery minus $100,000 in costs.

2

1  as the cost of the Class Action Administrator once those amounts have been finalized" (*id.* at 2
2  n.1).

3  *Fourth*, the release would apply to each class member who does not timely opt out, and
4  will release defendants from "all claims and causes of action . . . that arise out of the facts,
5  occurrences, transactions, or other matters that were alleged in, are the subject of or relate to the
6  Present Action" as set forth in paragraph six of the settlement agreement (two class members
7  opted out).

8  Plaintiffs' motions are unopposed. Defendants further state that they do not oppose the
9  motion for final approval of the settlement, but with the caveat that they "do not stipulate to, and
10 do not necessarily agree with, the statements made in [the motion]" (Dkt. No. 119 at 1).

11 The notice of settlement required that any objections to the settlement be received by
12 April 15, 2013. As of May 1, no objections had been filed with class counsel or the settlement
13 administrator. None has been filed with the Court, and no objections were heard at the fairness
14 hearing.

15 At the fairness hearing counsel revealed that defendants failed to comply with 28 U.S.C.
16 1715(b), which requires that notice of a proposed settlement in a CAFA action be served on
17 certain federal and state officials. Under Section 1715(d), after service of notice these officials
18 have a 90-day window in which to object to the settlement. As a result, this order tentatively
19 approves the proposed settlement, sets a schedule for further objections under Section 1715(d),
20 and sets a date for a final hearing on the settlement.

21                              **ANALYSIS**

22 This order first explains why the pending settlement is fair, reasonable, and adequate
23 under FRCP 23(e) and *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (setting
24 forth the factors to be considered when evaluating class action settlements). Next, this order
25 discusses why the awarded attorney's fees are reasonable.

26     **1.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

27 Having considered the terms of the settlement agreement, proposed plan of distribution,
28 and adequacy of notice to class members, and having considered the motion for final approval of

the settlement agreement, the declarations submitted therewith, oral argument by counsel, and all other documents of record in this matter, this order holds that the settlement agreement is in the best interests of the class and is fair, reasonable, and adequate under the factors set forth in *Hanlon*.

The settlement is grounded in a $3.5m cash payout. In 2012, plaintiffs' damages expert calculated an expected damages award range of $5.5m to $6.6m, exclusive of interest, if plaintiffs were successful at trial, or $9.3m to $10.6m using 10% per annum simple interest (Dkt. No. 119-3 at 56). Here, recovery of a 33%–53% fraction of the potential value of the suit must be considered in light of the difficulties plaintiffs would have faced if they had proceeded to trial. A prior order had dismissed plaintiffs' complaint, which dismissal was under appeal when the parties crafted the settlement. Plaintiffs also faced class certification (not a large risk) and the process of litigating successfully through summary judgment and trial (a larger risk). Under these circumstances, the discounted amount the class stands to recover under the settlement is fair and adequate. *C.f. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding a roughly 16% settlement fair and adequate given the difficulties involved in proving the case).

After deducting attorney's fees and expenses, the settlement proceeds will be distributed in the same percentage as ordered and approved in the *Adderley* settlement. Thus, the plan of distribution has already been ruled fair in the underlying action and comports with the reasonable expectations of the class members.

Class counsel represent that they have received a total of 18 phone calls from class members regarding the proposed settlement, all of whom expressed approval. Only two class members out of more than 2000 have opted out, and none has filed objections. No objections were raised at the fairness hearing.

Accordingly, approval of the settlement and plan of allocation is hereby **TENTATIVELY GRANTED**.

    **2.** **ATTORNEY'S FEES AND COSTS.**

        **A.** **Legal Standard.**

4

According to FRCP 23(h), a court "may award attorney's fees and nontaxable costs that are authorized by law or by the parties' agreements." FRCP 23(h). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994) ("*WPPSS*")).

Under the lodestar method, a court first calculates the lodestar by multiplying the reasonable hours expended by a reasonable hourly rate, then has the discretion to enhance that lodestar with a multiplier (if necessary) to achieve a reasonable overall fee. *WPPSS*, 19 F.3d at 1294 n.2 (citations omitted). Under the percentage-of-the-fund method, the court awards a percentage of the fund sufficient to provide a reasonable fee. *Ibid.* In common-fund cases, the choice to apply a particular method must result in an award that is "reasonable under the circumstances." *Ibid.* (citing *Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990)) (emphasis removed).

### B. Lodestar Method.

In the declaration appended to the motion for attorney's fees, class counsel states that it handled this action on a full contingency basis (Blecher Decl. ¶ 3). Accordingly, using the lodestar method might be inappropriate here, though it provides a helpful reference for determining a reasonable fee.

Class counsel have identified their legal staff that worked on this action, their hours billed, and their corresponding rates (Blecher Decl. ¶ 10). The declaration states that counsel spent 1,333.95 hours litigating for a lodestar of $569,802.50. After reviewing the timesheets, this order finds that while the total number of hours for the *firm* is correct, the individual billing was not. The error, however, shortchanges class counsel — the lodestar should be $571,962.50. This order further finds that the fees class counsel would charge for each of its staff and the hours billed were reasonable.

The requested fee of $850,000.00 would require a multiplier of 1.49 (rounding). The lodestar is already "presumptively reasonable," but a district court can award a multiplier based

5

on the twelve *Kerr* factors. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)), *opinion amended on denial of reh'g by*, 108 F.3d 981 (9th Cir. 1997). These factors are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* at 363 n.8. An "elaborately reasoned, calculated, or worded order[,]" however, is unnecessary because "a brief explanation of how the court arrived at its figures will do." *Cunningham v. Cnty. of L. A.*, 879 F.2d 481, 484 (9th Cir. 1988) (citations omitted). The class was represented by skilled and experienced counsel. The settlement of this case did require time and labor, including taking an appeal, but litigation in this court terminated fairly early. This order further notes that the action did not present any particularly novel or difficult legal questions.

While admittedly a little outdated, the data included in our court of appeals' decision in *Vizcaino* is instructive. There, our court of appeals found that of 24 common-fund cases, 83% had a multiplier between 1.0–4.0, and 54% ranged between 1.5–3.0. *Vizcaino*, 290 F.3d at 1047–51. Here, class counsel request a multiplier of 1.49, which is on the lower end of the range. Therefore, given the circumstances and the performance of class counsel as described above, a fee of $850,000 would be reasonable under the lodestar and multiplier method.

### C. Percentage-of-the-Fund Method.

Our court of appeals has made it clear that while a 25% benchmark is a good starting point, "courts cannot rationally apply any particular percentage — whether 13.6 percent, 25 percent or any other number — in the abstract, without reference to all the circumstances of the case." *Vizcaino*, 290 F.3d at 1047–48 (quoting *WPPSS*, 19 F.3d at 1298) (internal quotation marks omitted).

The question is "whether in arriving at its percentage [the district court] considered all the circumstances of the case and reached a reasonable percentage." *Ibid.* *Vizcaino* outlined at least five circumstances a court could consider to determine a reasonable percentage: (1) whether counsel "achieved exceptional results for the class"; (2) the risk to class counsel; (3) whether counsel "generated benefits beyond the cash settlement fund"; (4) how similar the proposed fee is to those in similar cases; and (5) the burden to counsel in conducting the case. *Id.* at 1048–50 (quotations and citations omitted) (internal quotation marks omitted). *See also Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1303–05 (W.D. Wa. 2001) (describing the five circumstances the Ninth Circuit approved).

Class counsel seek 25% of the net fund after expenses are deducted. After considering the *Vizcaino* factors, this order finds that 25% would be too high of an award. Counsel did have to take up an appeal after the case was dismissed, which posed one barrier to recovery, but the case was not overly complicated. A more appropriate award lies midway between the lodestar and the 25% counsel seeks: $710,981.25.[2]

**CONCLUSION**

Accordingly, it is hereby ordered as follows:

1. The Court hereby finds that the settlement is fair, reasonable, and adequate as to the class, plaintiffs, and defendants, that it is the product of good faith, arms-length negotiations between the parties, and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The breadth of the release to be imposed on the absent class members is sufficiently narrow. The final settlement is therefore tentatively approved.

2. The notice given to class members was the best notice practicable under the circumstances, was valid, gave due and sufficient notice to all class members, and complied fully with the Federal Rules of Civil Procedure, due process, and all other applicable laws. The settlement administrator also maintained a 24-hour, toll-free helpline that class members could call to obtain further information about the settlement. A full and fair opportunity was afforded

---

[2] This $710,981.25 figure is one half of the difference between $850,000 (the 25% requested) and $571,962.50 (the correct lodestar without the multiplier): (850,000 – 571,962.5)/2 + 571,962.5.

7

to class members to participate in the proceedings to determine whether the proposed settlement should be given final approval.

3. Accordingly, this order holds that all class members who did not exclude themselves from the settlement by filing a timely request for exclusion are bound by this settlement order and judgment.

4. The Court retains continuing jurisdiction over the class action, named plaintiffs, the class, and defendant for four years (until May 31, 2017) from the date of entry of this order so that it can supervise the implementation, enforcement, construction, and interpretation of the settlement agreement and this order.

5. The Court hereby *tentatively* awards to plaintiffs' counsel attorney's fees of $710,981.25 and $50,000 in litigation costs and expenses, to be paid from the settlement fund. Plaintiffs' counsel shall be awarded the $50,000 as well as 50% of the attorney's fees upon final approval of the settlement. The remaining 50% of the attorney's fees and up to $50,000 in additional expenses will be held in reserve. The reserved funds will first be used to pay up to $50,000 in administrative and other out-of-pocket expenses. Next, the reserved funds will be used to cover shortfalls and glitches in payments to class members. The remaining funds may be recovered only after counsel certifies that the fund is completely wound up. If problems do arise and if management of this fund so necessitates, any shortfall in funds to pay class members may be deducted from the unpaid attorney's fees. To repeat, counsel must pay attention to how the administrator is managing the fund. Mistakes may lead to shortfalls and those shortfalls may have to be paid out of the reserved attorney's fees. Any surplus after all administrative expenses and all class members are paid in full will be added to the attorney's fees award.

6. Payments from the net settlement fund to class members shall be determined based on the procedure set forth in the proposed plan of distribution.

7. As stated above, this order is tentative. Final approval will be entered only if there are no objections received from the federal and state officials notified under Section 1715 within the 90-day window. If any objections are received, they will be addressed at a final hearing. This order accordingly sets the following schedule:

8

- Class counsel shall mail out Section 1715 notices by **JUNE 5**.
- Proof of service shall be filed by **JUNE 12**.
- A further hearing on any objections shall be on **SEPTEMBER 26 AT 3:00 P.M.**
- If no objections are filed by September 5, counsel may file a joint motion to confirm the tentative approval and vacate the September 26 hearing by **SEPTEMBER 16 AT NOON**.

**IT IS SO ORDERED.**

Dated: May 31, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE